

FILED
2020 Jun-25  AM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOMASADA BIRMINGHAM METROPOLITAN, LLC,** | ) ) ) | |
| **PLAINTIFF,** | ) ) | **CASE NO. _____** |
| **v.** | ) ) | |
| **MAXUS METROPOLITAN, LLC,** | ) ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Bomasada Birmingham Metropolitan, LLC ("Bomasada" or "Plaintiff") files this original complaint against Maxus Metropolitan, LLC ("Maxus"), Defendant, and in support shows the following:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Bomasada is a limited liability company formed under the laws of the State of Delaware and is authorized to conduct business in the State of Alabama.

2.      Defendant, Maxus, is a limited liability company formed under the laws of the State of Missouri and is authorized to conduct business in the State of Alabama.  It can be served by serving its registered agent, <u>CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama  36104</u>.

3.      The members of Bomasada are Stuart Fred, a resident citizen of the State of Texas, and John Gilbert, a resident citizen of the State of Texas.

4.      Upon information and belief, the members of Maxus are citizens of the State of Missouri.[1]

5.      The members of each LLC therefore establish complete diversity of citizenship.

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 81(a)(6).

## FACTUAL ALLEGATIONS

8.      Plaintiff and Defendant entered into a real estate purchase and sale agreement dated August 31, 2018 (the "Purchase Agreement") for the purchase and sale of the Metropolitan Apartments located at 2900 7th Avenue South, Birmingham, Alabama 35233 (the "Property").   A true and correct copy of the Purchase Agreement is attached hereto as "Exhibit 1."

9.      Bomasada was the prior owner of the Property.

---

[1] Bomasada has obtained the corporate registration documents for Maxus from the Missouri Secretary of State's office and the names of Maxus's members are not disclosed.  The only individuals that Bomasada's principals have ever dealt with are from the State of Missouri. Bomasada will immediately issue discovery if necessary.

10.     On or about June 2018, Maxus, through its real estate broker, approached Bomasada about purchasing the Property.

11.     The Property was not for sale when Maxus approached Bomasada.

12.     Maxus pushed for the sale nonetheless.

13.     The parties ultimately agreed to and executed the Purchase Agreement for the sale of the Property.

14.     The purchase price of the Property was $56,150,000 plus a Profit Participation[2] as described in the Purchase Agreement.

15.     The Purchase Agreement states in relevant part the following:

PURCHASER ACKNOWLEDGES AND AGREES THAT IT WILL BE PURCHASING THE PROPERTY BASED SOLELY UPON ITS INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY, AND THAT PURCHASER WILL BE PURCHASING THE PROPERTY "AS IS" "WHERE IS" AND "WITH ALL FAULTS", BASED UPON THE CONDITION OF THE PROPERTY AS OF THE DATE OF THIS AGREEMENT.  AND THAT SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN RESPECT OF THE PROPERTY…PURCHASER HEREBY RELEASES SELLER FROM ANY AND ALL LIABILITY IN CONNECTION WITH ANY CLAIMS WHICH PURCHASER MAY HAVE AGASINT SELLER AND PURCHASER HEREBY AGREES NOT TO ASSERT ANY CLAIMS FOR CONTRIBUTION, COST RECOVERY OR OTHERWISE, AGAINST SELLER RELATING DIRECTLY OR INDIRECTLY TO THE PROPERTY…"

---

[2] Bomasada is not bringing any claims under the Profit Participation Agreement in this action.

*See* Exhibit 1, paragraph 21(a).

16.     The Purchase Agreement further states the following:

"Except as provided herein, this Agreement contains the entire agreement between the parties relating to the transactions contemplated hereby and supersedes any prior written or oral agreement of the parties with respect to such subject matter."

*See* Exhibit 1, paragraph 22(c).

17.     The parties, at the closing of the purchase of the Property, also executed (1) a Bill of Sale and (2) a Warranty Deed containing the same "As Is" "Where Is" language cited above.

18.     Maxus was provided time to inspect the Property prior to the sale.

19.     At the time of the sale, the Property was still under construction with Phases 1-3 complete with Certificates of Occupancy delivered and partially pre-leased.

20.     Bomasada's general contracting company, Bomasada BHM Construction, LLC[3] ("BHM"), was the General Contractor that was in the process of finishing the construction of Phases 4-6.

21.     Notably, the exterior facades and roofs on all six fire phases had been completed at the time of the sale as evidenced in the picture below.

---

[3] Bomasada BHM Construction, LLC is a separate legal entity from the plaintiff in this action, Bomasada Birmingham Metropolitan, LLC.

22.     Maxus entered into a separate construction contract with BHM to complete the construction of Phases 4-6 (the "Completion Agreement").[4]

23.     The Completion Agreement was executed at the same time as the Purchase Agreement.

24.     Below is a photograph of the entire Property on or about August 31, 2018 (the time the Purchase Agreement was signed).



25.     On September 27, 2018, a fire completely destroyed Phase 6.

---

[4] This action does not relate to work BHM did for Maxus after the sale of the Property.  Any work performed for Maxus after the sale is governed by the Completion Agreement.

26.     The Property was closed for several months while the authorities investigated the cause of the fire.

27.     The authorities determined the cause of the fire to be arson.

28.     From approximately December 2018 to June 2019, BHM performed for Maxus both the work under the Completion Agreement and repairing areas in Phase 5 that were damaged by the fire.[5]

29.     In June 2019, Maxus required all current residents of the Property to vacate due to an alleged environmental concern caused by the fire.

30.     The alleged environmental concerns were due to the opinions of Forensic Building Science, Inc. ("FBS").

31.     On September 3, 2019, BHM was hired by Maxus to rebuild Phase 6.

32.     At the same time BHM was rebuilding Phase 6, Maxus hired another contractor, Bear Claw Construction Management ("BCCM"), to perform remediation in Phases 1-4 relating to the alleged environmental issues.

33.     On or about January 2020, FBS was hired by Maxus to perform inspections above and beyond its initial environmental investigation.

34.     FBS was hired by Maxus to search for any alleged construction defects throughout the entire Property.

---

[5] Phase 5 is directly across from Phase 6 and is connected to Phase 6 by a bridge.  The heat and embers from the Phase 6 fire damaged parts of Phase 5.

35.     On April 17, 2020, FBS issued a report which suggested Bomasada, perform, among other things:

      a.  Remove all exterior cladding [siding];

      b.  Remove alleged water damaged sheathing; and

      c.  Install new sheathing to replace any alleged damaged sheathing.

36.     Maxus suggested Bomasada pay for this or do this work itself.

37.     As shown by the photograph above, the sheathing and the exterior cladding/façade was complete at the time of sale.

38.     On May 7, 2020, Maxus (through its Chief Financial Officer, Ryan Snyder[6]) wrote Bomasada an email and stated that BCCM was pricing removing all siding and applying a type of liquid applied sealant to the sheathing.

39.     Maxus suggested Bomasada pay for this or do this work itself.

40.     As shown by the photograph above, the sheathing and the exterior cladding/façade was complete at the time of sale.

41.     In June 2020, Maxus hired another company, Centric, to provide a report regarding the siding and façade materials installed on Phases 1-5 of the Project.

42.     On June 8, 2020, Centric provided a report on the condition of Phases 1-5.

---

[6] Ryan Snyder is the same person who signed the Purchase Agreement on behalf of Maxus.

43.     The Centric Report claims that there are failures in the construction of the sheathing and exterior façade.

44.     The Centric Report recommends that a full side of the Property have the siding removed to inspect the interior sheathing.

45.     Maxus suggested Bomasada pay for this or do this work itself.

46.     As shown by the photograph above, the sheathing and the exterior cladding/façade was complete at the time of sale.

47.     Maxus is now demanding that Bomasada remove and replace all or portions of exterior façade, siding, and sheathing on all Phases 1-5 of the Project at Bomasada's cost and expense.

48.     The amount of labor and materials required to remove and replace the exterior façade, siding, and sheathing on all or portions of Phases 1-5 of the Project will exceed $75,000.00. (*See* Declaration of Stuart Fred, attached hereto as "Exhibit 2" and incorporated herein by reference.)

49.     Bomasada's verification of the amount necessary to perform this work is based on Bomasada's experience in the construction industry and in originally constructing Phases 1-5.  Bomasada therefore verifies that the costs to strip off and re-perform the work that Maxus is demanding takes place will exceed $75,000.00. (*See* Declaration of Stuart Fred.)

## COUNT ONE
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

50.     Plaintiffs adopt and incorporate the foregoing paragraphs as if fully set forth herein.

51.     Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment holding and declaring the following:

a.      Maxus purchased the Property pursuant to the Purchase Agreement attached as Exhibit 1;

b.      Maxus agreed to purchase the Property "as is" "where is", and "with all faults";

c.      Maxus is precluded and estopped from making any claims against Bomasada based upon any condition of the Property that existed as of the date of the Purchase Agreement;

d.      The Purchase Agreement precludes Maxus from making any claims that Bomasada breached any warranty (express or implied) or made any representation that is not contained in the Purchase Agreement;

e.      The Purchase Agreement precludes Maxus from claiming it is relying on any representation or warranty of Bomasada that is not contained in the Purchase Agreement; and

f.      The Purchase Agreement precludes claims by Maxus against Bomasada for the repair or replacement of any construction work performed on the Property prior to the date of the Purchase Agreement.

52.     Pursuant to the Agreement at paragraph 22(h), Bomasada seeks its reasonable expenses for prosecuting this action including all attorneys' fees and disbursements and court costs.  See Exhibit 1.

53.     The monetary value of the object of this litigation from Bomasada's perspective exceeds $75,000.00 in that if the Purchase Agreement is interpreted to require the work Bomasada will be exposed to greater than $75,000.00 in investigation, diagnosis, and repair expenses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests:

(a)     That this Court take jurisdiction of this cause;

(b)     That this Court order, adjudge and decree that this is a proper cause for an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201, and that there is a bona fide controversy between the parties as to their legal rights, duties, status and liabilities;

(c)     That upon a final hearing of this cause, this Court will declare the rights, duties, status, and legal relations of the parties relative to the agreements in question;

(d)     That upon a final hearing on this cause, this Honorable Court will order, adjudge, and declare or decree the declarations sought at paragraphs 28(a-f) cited above;

(e)     That upon a final hearing on this cause, this Honorable Court will order that Maxus pay all reasonable expenses of prosecuting this action that were incurred by Bomasada including, without limitation, all attorneys' fees, disbursements and court costs; and

(f)     That upon a final hearing on this cause, this Court will order, adjudge, and declare or decree any such other, different, or further legal or equitable relief to which Plaintiffs are entitled.

*s/ R. Ryan Daugherty*
Robert R. Baugh (ASB-0312-a64r)
R. Ryan Daugherty (ASB-1653-b34d)
Attorneys for Plaintiff
Bomasada Birmingham Metropolitan, LLC

**OF COUNSEL:**
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:   (205) 930-5100
Fax:   (205) 930-5335
rbaugh@sirote.com
rdaugherty@sirote.com

## DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT:

Maxus Metropolitan, LLC
c/o CT Corporation System – Reg. Agent
2 North Jackson Street, Suite 605
Montgomery, AL 36104